### Couch *against* Waring.

Though the holder of a promissory note has a right to actual payment of it, which the mere act of the law never takes from him, and so long as he remains passive, or does no act to impair this right, he may enforce such payment from any or all the parties liable ; yet as the maker of a note is primarily liable, and the indorsers are in nature of sureties, for the performance of his act, and have a right to look to him for indemnity, if the holder do any act, the effect of which is to suspend, or to impair or to destroy that right, he cannot afterwards resort to them.

Therefore, where the holder of a promissory note commenced a suit thereon against the maker and obtained judgment ; the maker filed a bill in chancery for an injunction against proceedings under such judgment, and execution was thereupon stayed for three or four years, when the chancery suit was abandoned, and judgment was rendered in the action on the note for the amount of the former judgment and interest thereon, so far as it came within the demand of the declaration ; an execution issued on the latter judgment, was levied on the debtor's real estate, which was duly set off to the creditor ; after which the holder instituted a suit against the indorser, to recover the balance of interest on the note, not included in the judgment and execution, and remaining unsatisfied; it was held, that the effect of these proceedings was to discharge the maker from all further liability, and to preclude the holder from resorting to the indorser.

This was an action of *assumpsit*, brought by *Couch*, as surviving partner of the firm of *Stebbins & Couch*, against the defendant *Waring*, as indorser of a promissory note, for 3084 dollars, 5 cents, dated *August*, 4th, 1821, made by *William Waterbury* jun., payable to the defendant, or his order, four months after date, and by him indorsed to *Stebbins & Couch.*

The cause was tried at *Fairfield, December* term, 1831, before *Bissell*, J.

On the trial, the defendant gave in evidence a judgment recovered by *Stebbins & Couch*, on the note in question, against *Waterbury*, the maker, with an execution issued thereon, levied on *Waterbury's* real estate, which was duly set off to the creditors ; and the defendant thereupon claimed, that by means of these proceedings, he and *Waterbury* were discharged. From the record produced, it appeared, that the suit was commenced in *May*, 1822, demanding 4000 dollars damages, returnable to the county court, in *November*, 1822 ; that it was appealed to the superior court, and continued, from term to term, until *March*, 1824, when the plaintiffs therein recovered judgment, by default ; that *Waterbury* immediately filed a bill in chancery for an injunction against proceedings under the judgment ; that execution was thereupon stayed until *Sep-*

*tember*, 1827, when *Waterbury* suffered a non-suit on his bill in chancery, and judgment was rendered in favor of *Stebbins & Couch* to recover 4000 dollars damages, being the amount of damages previously recovered and interest thereon so far as the demand in the declaration would allow, with additional costs, making the whole costs 80 dollars and 6 cents. These sums made up the amount of the execution. After the levy, this suit was instituted to recover of *Waring* the difference between the amount of the note, including interest to that time, and the damages recovered of *Waterbury*. It was admitted, that nothing had been paid on the note, except what was thus obtained. Upon these facts the judge charged the jury, that the plaintiff could not recover. A verdict was thereupon given for the defendant; and the plaintiff moved for a new trial for a misdirection.

*Sherman* and *Hawley*, in support of the motion, contended, That the partial satisfaction, by virtue of the levy, was an extinguishment of the claim *pro tanto* only, leaving the rights of the holder, as to the balance, unimpaired. *Waring* was not a party to the judgment; and that alone was not evidence for him. In connexion with ulterior proceedings, it was admissible to shew *actual payment;* and for that purpose and to that extent only. The sum paid and the balance due are to be ascertained *dehors* the judgment. Though the holder of a bill or note can obtain but one complete satisfaction, yet part payment by one party, does not discharge any other. No one can object to it, because it is in aid of all the parties eventually liable on the bill. 8 *East* 580. 3 *Kent's Com.* 78. A mere formal satisfaction from one party, does not discharge any other. *Macdonald* v. *Bovington*, 4 *Term Rep.* 825. It has, indeed, been decided, that if the holder of a bill *fully discharges* the acceptor, by composition, he cannot afterwards resort to the drawer; but this proceeds on the principle that the holder thereby *pledges his good faith* that the parties shall not be further pursued. If the holder could afterwards resort to the drawer, *that* would bring the drawer upon the acceptor again, and his discharge would be fruitless. Ex parte *Wilson*, 11 *Ves.* jun. 410. But in this case, the plaintiff, by pursuing his remedy, against the maker, and getting what he could, has given no pledge that he will not seek the residue from any party to the bill. The hostile proceedings of the maker against the plaintiff

occasioned the delay ; and *that* alone prevented complete satisfaction, by the execution. By the contract of indorsement, the defendant warranted that the maker should pay *the whole* ; and the plaintiff has done nothing to excuse performance. Here was no composition—no giving further time—no taking of new security. Ex parte *Smith*, 3 *Bro. Ch. Ca.* 1. *English* v. *Darley.* 2 *Bos. & Pull.* 61. *Clarke* & al. v. *Devlin*, 3 *Bos. & Pull.* 363. *Gould* & al. v. *Robson* & al. 8 *East*, 576.

*N. Smith* and *Booth*, contra, insisted, 1. That by virtue of the judgment against *Waterbury*, the maker, and satisfaction of the execution issued thereon, *he* was discharged from any further liability to the plaintiff's claim. It is very clear, that he cannot be sued again on this note.

2. That the principal being discharged, by the act of the creditor, the liability of the surety thereupon ceased. Ex parte *Wilson*, 11 *Ves.* 410. *Lynch* v. *Reynolds*, 16 *Johns. Rep.* 41. *Beardsley* v. *Warner*, 6 *Wend.* 610. 613. *Douglass* & al. v. *Wilkeson*, 6 *Wend*, 637.

BISSELL, J. It has been strongly insisted upon, in the argument of this case, that the judgment and execution offered in the court below, being *res inter alios actae*, were admissible only to prove a payment *pro tanto.* To this it may be answered, that the records offered, are evidence of the facts therein contained ; and of the legal consequences which result from those facts. If, therefore, the legal effect of the facts disclosed upon these records be to discharge *Waterbury*, the maker of the note, it is idle to contend, that the evidence is not available for this purpose, as well as to prove payment.

What, then, is the legal effect of the facts, appearing upon this record ? This is the question now presented for decision.

Some principles, regarding bills of exchange and promissory notes, and having a bearing on this case, are too well settled to admit of dispute or doubt.

There is, for instance, no principle better established, than that a judgment against the maker, discharges none of the subsequent parties to a promissory note. Nor does a mere technical satisfaction constitute, for them, any defence : As where the acceptor of a bill of exchange was charged in execution, and discharged under the lords' act. And where the maker of a promissory note, being taken in execution, was discharged

*Fairfield,*
June, 1832.

Couch
*v.*
Waring.

under an insolvent debtor's act, it was holden, that the subsequent parties still remained liable. *Chitty on Bills,* 161. 362. *Macdonald* v. *Bovington,* 4 *Term Rep.* 285. *Nadin* v. *Battie & al.* 5 *East,* 147.

So also, if the maker become a bankrupt, and the holder prove his debt under the commission, and receive a dividend; this will not prevent him from resorting to the subsequent parties to the note. Nor will he be thus precluded, although he receive part payment from the maker; or levy a part under a *fi. fa.* against him; for this is for the benefit of all parties. *Gould* v. *Robson & al.* 8 *East,* 580. *Walwyn* v. *St. Quintin,* 1 *Bos. & Pul.* 652. Ex parte *Wilson,* 11 *Ves.* 412. *Kenworthy* v. *Hopkins,* 1 *Johns. Ca.* 107.

On the other hand, it is equally well settled, that if the holder give time to the maker, or take from him any new security payable at a future day, without the assent of the other parties to the note, they are thereby discharged from their liability.

So also, if the holder enter into a composition with the maker, or discharge him, or do any act, the effect of which is to discharge him, (as by letting him out of custody upon a *ca. sa.*) the subsequent parties to the note are also discharged. *Claxton* v. *Swift,* 3 *Mod.* 87. *English* v. *Darley,* 2 *Bos. & Pul.* 61. S. C. 3 *Esp. Rep.* 49. *Clark & al.* v. *Devlin,* 3 *Bos. & Pul.* 363. *Gould* v. *Robson,* 8 *East,* 580. *James* v. *Badger,* 1 *Johns. Ca.* 131.

The principles involved in these decisions, are obviously these :

1. That the holder of a promissory note is entitled to actual payment of it. This right the mere act of the law never takes from him, and so long as he remains passive, or does no act to impair this right, he may enforce such payment from any or all the parties liable. But

2. As the maker of a note is previously liable; and the indorsers are in the nature of sureties, for the performance of his act, and have a right to look to him for indemnity; if the holder do any act, the effect of which is to suspend, or to impair, or to destroy that right, he cannot afterwards resort to them.

Within which of these principles does the case before us fall ? It seems to me to fall clearly within the latter; and that the maker of this note is forever discharged, by the acts of the

plaintiff. He had the entire dominion of the note, upon which he caused the action to be brought. He stated his own demand ; prayed out execution, and procured that execution to be satisfied out of the goods and estate of the maker. In this the plaintiff has acted voluntarily. No part of the proceedings were, as to him, *in invitum.* He was not bound to take judgment for a less sum than was due on the note ; nor was he obliged to enforce that judgment even after it was obtained. He might then have resorted to the indorser. He did not choose to do so ; but proceeded to compel the actual payment of his judgment against the maker.

What is the effect of these acts of the plaintiff? Is it not to discharge the maker of the note from *all liability?* That the plaintiff cannot again resort to him, is clear beyond all doubt. This would be to defy all principle and all analogy.

The debt, *as to him,* is extinguished ; and *as against him,* the maker has the highest discharge known to the law. He can have no relief even by petition for a new trial. Can he, then, by proceeding against the indorser, authorize *him* to resort to the maker? Or, in other words, may he do that indirectly, which he has precluded himself from doing directly? It has been gravely contended, that he may. It is said, this action is sustainable, *because* the defendant may have his remedy over, against the maker of the note.

If the premises were true, the conclusion would, undoubtedly, follow. But they are denied ; and if found to be false, it is admitted, that the conclusion must fail. Now, I very well know, that there are cases, in which the holder of a note is precluded from resorting to the maker, and yet may proceed against the subsequent parties ; and they, having paid the note, may resort to the maker for their indemnity. As where he is discharged under the lords' act, or under the insolvent debtor's act, or has become bankrupt, and obtained his certificate. But in all these cases, an act of the law has intervened, and prevented the holder from resorting to the drawer of the note, on the ground, that as between them, there is a technical satisfaction.

But these cases do not go one step towards establishing the principle here contended for. Here the holder has, *by his own voluntary acts,* precluded himself from resorting to the maker. And is there a case to be found, where this has been done, and the subsequent parties to the note have still been held liable?

Can a debt be extinguished, by the act of its owner, and yet the surety for that debt remain answerable? Upon what principle is it, that where time is given to the maker, the subsequent parties to the note are discharged? Clearly, upon this principle; that if payment might be enforced against a subsequent party, he would have an immediate right of action against the maker: And the law will not endure, that the holder may do that indirectly, which he has precluded himself from doing directly. It would be a breach of faith.

But here the holder has done an act, which prevents him from resorting to the maker *in all time.* He has discharged him. Can he, then, without a violation of all principle, authorize a subsequent party to the note, to do that which *he* can never do? and which he is prevented from doing, not by an act of the law, but by a course of proceedings entirely voluntary on his part?

But it has been urged, that the undertaking of the indorser is, that the maker shall pay the entire sum due on the note; and as only a part has been paid, the indorser is liable.

If the preceding observations are correct, they furnish a decisive answer to this claim.

But why was not the whole sum due on the note paid? The only reason assigned, is, that the holder saw fit to take judgment for a less sum. And having enforced payment of the judgment, he now resorts to the indorser to recover the balance. And this, it is contended, he has a legal right to do: that is, the holder of a promissory note may so sever and divide an entire contract, as to sue for and recover distinct portions of it, of each of the parties liable. If, for instance, he hold a note of 3000 dollars, with two indorsements, he may sue for and recover 1000 dollars of the maker, and 1000 dollars of each of the indorsers; and they, in their turn, may have their remedies over against the maker for the sums recovered of them respectively: so that after having satisfied one judgment, the maker is still liable to two further judgments on one and the same undertaking. In what book of authority, or upon what principle, is this doctrine sanctioned?

It has, indeed, been urged, that this is nothing more than what obtains, almost daily, in practice.

It is said, that the holder of a note, may proceed against all the parties to it, may recover judgment against all, and may obtain a partial satisfaction of one party, and the residue of

another. All this is true. But he can obtain but one satisfaction and his costs. And I have yet to learn, that where a party has rightfully paid a judgment recovered against him, he may be a second time subjected upon the contract, which was the foundation of that judgment.

In *Windham* v. *Wither*, 1 *Stra.* 515. the plaintiff brought two actions on a promissory note; one against the maker and another against the indorser, and recovered in both. And the principal *in one judgment* and the costs in both having been tendered, it was moved, that no execution might be taken out, which was ordered accordingly; and the court said, they would have laid the plaintiff by the heels, if he had taken out execution upon both.

I am of opinion that this action cannot be sustained; and that the rule to shew cause must be discharged.

The other Judges were of the same opinion.

New trial not to be granted.